IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NAV-TV, Corp.,<br><br>    *Plaintiff*,<br><br>v.<br><br>Audionics System, Inc. d/b/a Crux<br>Interfacing Solutions, et al.,<br><br>    *Defendants.* | Case No. 2:15-cv-01467-JRG-RSP |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the opening claim construction brief of NAV-TV, Corp. ("Plaintiff") (Dkt. No. 56, filed on June 27, 2016),[1] the response of Audionics System, Inc. d/b/a Crux Interfacing Solutions ("Defendant") (Dkt. No. 58, filed on July 11, 2016), and the reply of Plaintiff (Dkt. No. 59, filed on July 18, 2016). The Court held a hearing on the issues of claim construction and claim definiteness on July 28, 2016. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

## Table of Contents

I. BACKGROUND ............................................................................................................. 3
II. LEGAL PRINCIPLES ................................................................................................... 5
    A. Claim Construction .............................................................................................. 5
    B. Departing from the Ordinary Meaning of a Claim Term................................. 8
    C. Functional Claiming and 35 U.S.C. § 112, ¶ 6 (pre-AIA) / § 112(f) (AIA) ...... 10
    D. Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) ........... 12
III. PERSON OF ORDINARY SKILL IN THE ART ...................................................... 13
IV. AGREED CONSTRUCTIONS..................................................................................... 13
V. CONSTRUCTION OF DISPUTED TERM ................................................................ 14
VI. CONCLUSION ............................................................................................................. 18

## I. BACKGROUND

Plaintiff alleges infringement of U.S. Patents No. 7,917,261 (the "'261 Patent) and No. 8,103,407 (the "'407 Patent) (collectively, the "Asserted Patents"). The '261 Patent is entitled "System and Methods For Controlling Vehicular Functions." The application leading to the '261 Patent was filed on September 23, 2007 and the patent issued on March 29, 2011. The '407 Patent is also entitled "System and Methods For Controlling Vehicular Functions." The application leading to the '407 Patent was filed on February 22, 2011 and the patent issued on January 24, 2012. The '407 Patent issued from a continuation of the application that issued as the '261 Patent.



In general, the Asserted Patents are directed to technology for controlling devices within a vehicle. The technology can be understood generally with reference to Figure 1 of the '261 Patent, reproduced here. The patents describe separating a device (e.g., the radio head unit (16) in the figure) from the vehicle's data communications bus (12) using a firewall (14). Communications involving this "firewalled" unit run through the firewall. Thus, the firewall can control the communications, such

as to allow or modify messages from the firewalled device to a device on the vehicle's bus that control the device on the vehicle's bus.

>The abstract of the '261 Patent provides:
>
>A method of controlling a control system for a vehicle comprising: providing at least one data communications bus; providing at least one firewall in communication with at least one data communications bus, wherein the at least one firewall creates at least two data communications bus from the at least one data communications bus; providing at least one vehicle device in communication with at least one of at least two data communications bus; providing at least one vehicle device in communication with at least one firewall; and providing at least one firewalled controller in communication with at least one firewall, wherein the firewalled controller transmits a directive to the firewall and the firewall transmits the directive through the at least two data communications bus which controls the at least one vehicle device.
>
>The abstract of the '407 Patent provides:
>
>A control system for a vehicle having at least one data communications bus; at least one firewall in communication with the at least one data communications bus, wherein the at least one firewall creates at least two data communications buses from the at least one data communications bus; at least one vehicle device in communication with at least one of the at least two data communications buses; wherein the at least one vehicle device is in communication with at least one firewall; and at least one firewalled controller in communication with at least one firewall.

Claim 1 of the '261 Patent and Claims 1, 5, 10, and 11 of the '407 Patent, provided here as examples, recite as follows:

| '261 Patent | '407 Patent |
|---|---|
| 1. A control system for a vehicle comprising: at least one data communications bus; at least one firewall in communication with said at least one data communications bus, wherein said at least one firewall creates at least two data communications bus from said at least one data communications bus; at least one vehicle device in communication with at least one of said at least two data communications bus; wherein said at least one vehicle device is in communication with said at least one firewall; and at least one firewalled controller in communication with said at least one firewall, wherein said firewalled controller allows a directive to be transmitted to said firewall through said at least one communication bus which controls said at least one vehicle device and said firewall allows said directive through a second at least one data communications bus which controls said at least one vehicle device, and wherein said firewall changes said directive prior to transmission. | 1. A control system for a vehicle comprising: at least one data communications bus; at least one firewall in communication with said at least one data communications bus, wherein said at least one firewall creates at least two data communications buses from said at least one data communications bus; at least one vehicle device in communication with at least one of said at least two data communications buses; wherein said at least one vehicle device is in communication with said at least one firewall; and at least one firewalled controller in communication with said at least one firewall.<br><br>5. A control system as in claim 1, wherein said firewall allows a directive through a second at least one data communications bus which controls said at least one vehicle device.<br><br>10. A control system as in claim 1, further comprising at least one microcontroller, wherein said microcontroller monitors said at least two data communications buses and issues directives to control the at least one vehicle device according to the status of said at least two data communications buses.<br><br>11. A control system as in claim 1, wherein said firewalled controller allows a directive to be transmitted to said firewall through said at least one communication bus which controls said at least one vehicle device and said firewall changes said directive prior to transmission. |

## II.   LEGAL PRINCIPLES

### A.   Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at

5

861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the

court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining

7

the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

### B. Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

8

from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Although a statement of lexicography or disavowal must be exacting and clear, it need not be "explicit." *See Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("a patent applicant need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of his patent"). Lexicography or disavowal can be implied where, *e.g.*, the patentee makes clear statements characterizing the scope and purpose of the invention. *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[W]hen the scope of the invention is clearly stated in the specification, and is described as the advantage and distinction of the invention, it is not necessary to disavow explicitly a

different scope."). Nonetheless, the plain meaning governs "[a]bsent implied or explicit lexicography or disavowal." *Trs. of Columbia Univ.*, 811 F.3d at 1364 n.2.

## C. Functional Claiming and 35 U.S.C. § 112, ¶ 6 (pre-AIA) / § 112(f) (AIA)[3]

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 & n.3 (Fed. Cir. 2015) (en banc in relevant portion). Section 112, Paragraph 6, provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).

But § 112, ¶ 6 does not apply to all functional claim language. There is a rebuttable presumption that § 112, ¶ 6 applies when the claim language includes "means" or "step for" terms, and that it does not apply in the absence of those terms. *Masco Corp.*, 303 F.3d at 1326; *Williamson*, 792 F.3d at 1348. The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (§ 112, ¶ 6 does not apply when "the claim language, read in light of the specification, recites sufficiently definite structure" (quotation marks omitted) (citing *Williamson*, 792 F.3d at 1349; *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014))); *Williamson*, 792 F.3d at 1349 (§ 112, ¶ 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure"); *Masco Corp.*, 303 F.3d at 1326 (§ 112, ¶ 6 does not apply when the claim includes an "act" corresponding to "how the function is performed"); *Personalized Media*

---

[3] Because the applications resulting in the Asserted Patents were filed before September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of § 112.

*Communications, L.L.C. v. International Trade Commission*, 161 F.3d 696, 704 (Fed. Cir. 1998) (§ 112, ¶ 6 does not apply when the claim includes "sufficient structure, material, or acts within the claim itself to perform entirely the recited function . . . even if the claim uses the term 'means.'" (quotation marks and citation omitted)).

When it applies, § 112, ¶ 6 limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347. Construing a means-plus-function limitation involves multiple steps. "The first step . . . is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.* The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). However, § 112 does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

For § 112, ¶ 6 limitations implemented by a programmed general purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339,

1349 (Fed. Cir. 1999). The corresponding structure is not a general purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

### D.     Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)[4]

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 2130. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id.* at 2130 n.10. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005); *accord Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Datamize*, 417 F.3d at 1351).

---

[4] Because the applications resulting in the Asserted Patents were filed before the effective date of the AIA, the Court refers to the pre-AIA version of § 112.

In the context of a claim governed by 35 U.S.C. § 112, ¶ 6, the claim is invalid as indefinite if the claim fails to disclose adequate corresponding structure to perform the claimed functions. *Williamson*, 792 F.3d at 1351–52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id*. at 1352.

## III. PERSON OF ORDINARY SKILL IN THE ART

While Plaintiff does not directly state a position regarding the person of ordinary skill in the art, it submits the Declaration of Roy A. Griffin III, P.E. ("Griffin Decl.") (Dkt. No. 56-1) in support of its claim-construction positions. Mr. Griffin opines "that a person of ordinary skill in the art would have had a bachelor of science degree in electrical engineering or experience equivalent to such an education, and one to two years of experience in the technology areas of automotive electronics and bus communications." Griffin Decl. ¶ 8.

Defendant does not object to Mr. Griffin's definition of a person of ordinary skill in the art and does not offer a competing definition.

Accordingly, the Court finds that that a person of ordinary skill in the art would have had a bachelor of science degree in electrical engineering or experience equivalent to such an education, and one to two years of experience in the technology areas of automotive electronics and bus communications.

## IV. AGREED CONSTRUCTIONS

The parties have agreed to the following constructions set forth in their Joint Claim Construction Chart Pursuant to Patent Rule 4-5(d) (Dkt. No. 60).

| Term[5] | Agreed Construction |
|---|---|
| "wherein at least one communications bus is private"<br><br>• '261 Patent Claim 11 | wherein at least one bus is physically separated from the vehicle bus |
| vehicle device<br><br>• '261 Patent Claim 1<br>• '407 Patent Claim 1 | manufacturer installed vehicle equipment or replacement electronic vehicle equipment that performs substantially similar functions as the originally installed equipment |
| firewall<br><br>• '261 Patent Claim 1<br>• '407 Patent Claim 1 | a device that breaks the bus communication path between at least two vehicle devices, wherein the device is installed in-line with the bus communication path, and whereby the normal bus traffic between the at least two vehicle devices may be altered by the device |

Having reviewed the intrinsic and extrinsic evidence of record, the Court agrees with and hereby adopts the parties' agreed constructions.

## V. CONSTRUCTION OF DISPUTED TERM

The only term in dispute is "directive."

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "directive"<br><br>• '261 Patent Claim 1<br>• '407 Patent Claims 5, 10, 11 | data that serves as an instruction or command as opposed to mere data content | a message or command |

### The Parties' Positions

Plaintiff submits that "directive" data is distinguished from "content" data in the Asserted Patents, and therefore "directive" should not be construed to include "content." (Dkt. No. 56 at

---

[5] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest level claim in each dependency chain is listed, and (2) only asserted claims identified in the parties' Joint Claim Construction Chart Pursuant to Patent Rule 4-5(d) (Dkt. No. 60) are listed. Plaintiff asserts Claims 1, 4, 5, 9, 11 and 12 of the '261 Patent and Claims 1, 4, 5, 9, 10, 11, and 12 of the '407 Patent. (Dkt. No. 56 at 1–2).

4) (quoting '261 Patent col.3 ll.19–20). Plaintiff further submits that the patents use the term "message" to include communicated data of any type, and thus "directive" should not be construed to include any message. (*Id*. at 4–5). Finally, Plaintiff submits that "directive" is used in the patents to refer to data that results in control of a vehicle device and is distinguished from content data that is analyzed to determine whether to issue a "directive." (*Id*. at 5–6) (citing '261 Patent col.4 l.63 – col.5 l.49).

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '261 Patent, at [57] Abstract, col.1 l.65 – col.2 l.26, col.2 l.51 – col.3 l.6, col.3 ll.19–20, col.3 l.39 – col.4 l.25, col.4 ll.46–61, col.4 l.63 – col.5 l.49. **Extrinsic evidence**: Griffin Decl. (Dkt. No. 56-1).

Defendant responds that "directive" is used in the Asserted Patents broadly to refer to something that can be transmitted, allowed through a second bus, and changed prior to transmission. (Dkt. No. 58 at 11) (quoting '261 Patent Claim 1). Defendant further responds that "directive" is narrowed in independent claims of the patents to "command" in that the claims recite that the system "issues directives to control the . . . vehicle device." Therefore, Defendant argues, "directive" should not be construed as "command." (*Id*. at 12) (citing '261 Patent Claims 10, 29; '407 Patent Claim 10). Defendant further responds that the patents describe an exemplary embodiment (the "iPod embodiment") in which a directive is a message that includes both an instruction and content, and in which only the content is changed prior to transmission. (*Id*. at 12–14). Thus, Defendant argues, limiting "directive" to a command or instruction would be improper as it would exclude this embodiment from the scope of Claim 1 of the '261 Patent, which recites "said firewall changes said directive prior to transmission." (*Id*. at 14–15).

15

In addition to the claims themselves, Defendant cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '261 Patent col.1 ll.28–46, col.2 ll.1–11, col.3 ll.19–20, col.3 l.39 – col.4 l.24, col.5 ll.5–8, col.5 ll.40–45; '407 Patent col.1 ll.32–49, col.2 ll.1–12, col.3 ll.17–18, col.3 l.37 – col.4 l.22.

Plaintiff replies that "directive" does not occur anywhere in the description of the iPod embodiment relied upon by Defendant for the proposition that the patents describe a "directive" as a "message." (Dkt. No. 59 at 1–2). According to Plaintiff, this embodiment does not reflect a "directive" at all; rather, it describes a message comprising "textual data." (*Id*. at 2). Plaintiff further replies that the iPod embodiment is covered by Claim 1 of the '407 Patent, and need not fall within the scope of all claims of both patents. (*Id*. at 3). Plaintiff further replies that the dependent claims that recite that the system "issues directives to control the . . . vehicle device" are distinct from their independent claims not on the grounds of "issue" and "control," as Defendant contends, but rather on other grounds, such as the requirement for a microcontroller. (*Id*. at 3–4). And, Plaintiff contends, Claim 1 of the '261 Patent expressly recites that the directive "controls [the] . . . vehicle device." (*Id*. at 4).

**Analysis**

The dispute over "directive" distills to whether "directive" includes any "message" or is limited to messages that command or instruct. The Court understands "directive" is used in the Asserted Patents to refer to a message that directs the recipient to act. "Directive" does not include every message. The parties agreed to the Court's construction at the hearing.

A "directive" is a message that that instructs the recipient to act. To begin, the Court agrees with Defendant that the instrument-cluster-contol messages described in the context of the iPod embodiment found at column 3, line 39 to column 4, line 24 of the '261 Patent are

directives. These messages direct the vehicle's instrument cluster to display text included in the message: a message consisting of message ID "192" followed by text directs the cluster to display the text on the cluster display's first line and a message consisting of message ID "193" followed by text directs the cluster to display the text on its second line. '261 Patent col.3 ll.55–63. The patents also describe an embodiment in which suspension-control messages ("directives to the suspension control module") direct the suspension control module to raise or lower the vehicle. *Id.* at col.5 ll.14–25. And the patents describe convertible-top-control messages ("open and close command[s]") that direct the top to open or close. *Id.* at col.5 ll.38–50. Common to each of these embodiments is that a communication (i.e., a message) instructs a device to act—the message is a directive in that it directs the device to act.

Not every message constitutes a "directive." For example, the patents distinguish between a "directive" and "content of data." *Id.* at col.3 ll.19–20 ("The firewall (14) may change the directive and/or content of data prior to transmission."). The Court is not persuaded by Defendant's iPod-embodiment-based argument that every message is a directive. It is true that Claim 1 of the '261 Patent recites "wherein said firewall changes said directive prior to transmission" and in the iPod embodiment the firewall changes the text, not the ID, of the messages. '261 Patent col.3 l.63 – col.4 l.24, col.6 ll.7–8. But this does not mean that all data constitutes a "directive." Rather, the messages of the iPod embodiment—in their entirety—are directives. This is distinct from a scenario in which the message consists of content data and therefore does not instruct the receiving device to do anything. For example, the patents describe a controller receiving and processing messages consisting of content, such as vehicle-speed data and temperature data. *Id.* at col.5 ll.12–50. These messages are not described as "directives" and do not instruct the controller to act. Rather, the controller processes the incoming content without

being instructed by the message to do so and, when appropriate, generates "directives" it sends to control the vehicle devices, such as instructing the suspension-control module to lower the suspension and instructing the convertible-top-control module to lower the top. *Id*.

Finally, claim differentiation does not suggest a different construction of "directive." Claim 10 of the '261 Patent and Claim 10 of the '407 Patent each recite a "microcontroller, wherein said microcontroller monitors said at least two data communications bus[es] and issues directives to control the at least one vehicle device according to the status of said at least two data communication bus[es]." '261 Patent col.6 ll.51–55; '407 Patent col.6 ll.43–47. These claims do not narrow "directive" to control messages, as Defendant contends. Rather, the claims limit how the control messages are generated—they are generated by a microcontroller based on the status of the buses. Similarly, Claim 29 of the '261 Patent recites "microcontroller, wherein said microcontroller monitors said at least two data communications bus[es] and issues directives according to the status of said at least two data communication bus[es]." Again, this claim does not narrow "directive" as Defendant suggests—it narrows how the directive is generated.

Accordingly, the Court construes "directive" as follows:

- "directive" means "message that instructs a device to act."

## VI. CONCLUSION

The Court adopts the above constructions set forth in this opinion for the disputed and agreed terms of the Asserted Patents. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. The testimony of any witness is bound by the Court's reasoning in this order. However, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted

18

by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 3rd day of August, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE